# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| **RONALD W. OGLE, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) No.: 3:09-cv -00537 |
| | ) REEVES/GUYTON |
| **SEVIER COUNTY REGIONAL PLANNING** | ) |
| **COMMISSION, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs bring this action against the Sevier County Planning Commission under 42 U.S.C. § 1983, asking the court to determine whether the Planning Commission acted arbitrarily and capriciously in denying plaintiff's concept plan for the High Bridge Development. The matter was tried before the undersigned on September 24-25, 2018. Having heard the testimony at trial and having reviewed the record in this case, the following are the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## FINDINGS OF FACT

1. Plaintiffs bring this action under 42 U.S.C. § 1983 for violations of plaintiffs' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Plaintiffs own the High Bridge property which consists of approximately 852 acres in Sevier County, Tennessee. Plaintiffs propose to develop High Bridge as a subdivision of 400-450 residential homes. The property is bounded on the south by the Great Smokey Mountains National Park. It is surrounded on the other three sides by privately owned property.

3. In Sevier County, the development and subdivision of property is subject to compliance with the county's Subdivision Regulations.

4. Article III, Section A, Paragraph 4(d) of the Subdivision Regulations establishes the right of way width requirements for streets that are part of a development plan.

5. Primary residential streets are those which are used primarily for access to the abutting residential properties, are designed to collect traffic from loop streets and cul-de-sac streets, and are required to have a 50 foot right of way.

6. Minor Residential and Loop Streets are those which are used primarily for access to the abutting residential properties, are designed to discourage through traffic, and are required to have a 40 foot right of way.

7. Cul-de-sacs are permanent dead-end streets or courts designed so they cannot be extended in the future. A cul-de-sac more than 500 feet in length is required to have a 40 foot right of way. A cul-de-sac less than 500 feet with five or fewer lots is required to have a 30 foot right of way.

8. These width requirements apply to private permanent easements such as Scottish Highland Way.

9. Immediately to the north of plaintiffs' property is the area known as "Millers Creek" which has been developed in separate stages as separate subdivisions. The Millers Creek developments are bordered on the north by federally owned land that has been designated for an extension of the Foothills Parkway.

10. Access to Millers Creek and plaintiffs' property is provided by a road known as Scottish Highland Way. Scottish Highland Way is a private road. It is not listed as a Sevier County Highway Department Road. Scottish Highland Way ends in two cul-de-sacs.

11. The parties agree that Scottish Highland Way has a 50 foot right of way from the intersection of Covemont Road and Covemont Lane to the entrance of plaintiffs' property, except for the part of Scottish Highland Way that crosses the Foothills Parkway, where it has only a 40 foot right of way.

12. The Planning Commission requires that all plans for proposed subdivision developments be submitted to it for approval in accordance with its Subdivision Regulations. According to the Planning Commission, any proposed subdivision in Sevier County must provide for access directly to a county road, or access via a 50 foot private easement to a county road. *See* Article III, Section A, Paragraph 14 of the Subdivision Regulations.

13. In February or March of 2007, the Southern Design Group, who was hired to represent plaintiffs, contacted Sevier County's Planner, Jeff Ownby, in order to obtain guidance as to the requirements for a concept plan for the High Bridge property. Ownby met with members of the Southern Design Group on several different occasions to discuss

the proposed concept plan and to go over the basic information required on a plan submitted for the Planning Commission's review.

14. Ownby testified that any subdivision entrance must be either a collector street or a primary residential street, both of which require a 50 foot right of way.

15. Scottish Highland Way, a private permanent easement, does not conform to the right of way requirements in Articles III and IV of the Subdivision Regulations because the right of way is only 40 feet. Subdivision regulations require the width of the road to be 50 feet until it connects with a county road.

16. Plaintiffs' Concept Plan was submitted in February or March 2007. After the Concept Plan was submitted, discussion ensued regarding access to the property, which included references to the deed for the property which indicated that access to the property via Scottish Highland Way across the Foothills Parkway was only 40 feet.

17. John Schubert, the representative for the plaintiffs, acknowledged that when the property was purchased in 2005, plaintiffs understood there was only a 40 foot easement, which was noted on the deed. He further testified he knew this was going to be an issue with the Planning Commission when plaintiffs decided to develop the property.

18. Plaintiff's Concept Plan was denied by the Planning Commission at a meeting in March 2007 for failing to meet the Subdivision Regulations.

19. After the denial, Southern Design Group claimed it had found a 50 foot right of way via a map plotted and recorded with the Register's Office in 1971. Ownby located the map relied upon by the Southern Design Group, which he also believed depicted a 50 foot right of way to plaintiffs' property. The plaintiffs' Concept Plan was then placed back

on the Planning Commission's agenda in April 2007 with a recommendation for approval. The High Bridge Development Concept Plan was approved based on the existence of a 50 foot right of way.

20. After the meeting, several Commissioners expressed concerns regarding the 50 foot right of way that had been created in the 1971 deed. The Commissioners did not believe that a 50 foot right of way still existed in 2007. As a result of these concerns, Ownby was asked to do further research by the Planning Commission. Ownby requested assistance from the attorney working on behalf of Sevier County, Jerry McCarter. Ownby requested that McCarter determine if the plaintiffs' property was served by a 50 foot right of way. McCarter determined that the 50 foot right of way platted in 1971 did not exist in 2007.[1]

21. McCarter examined the title and reviewed instruments in the chain of title. He also reviewed several instruments that referred to a 50 foot right of way, but found that right of way did not extend to plaintiffs' property. This information was presented to the County Planner.

22. Mark Pinkham is a title abstractor. McCarter asked him to locate or verify whether a 50 foot right of way existed to the High Bridge property. As part of Pinkham's research, he looked at the access granted to the property, including the property to the north of plaintiffs' property, the Foothills Parkway southern boundary, the northern side of the

---

[1] Plaintiffs contend that McCarter was testifying as an expert witness; however, the court finds that McCarter's testimony related to information that he provided to Ownby prior to the Planning Commission's decisions on the High Bridge Concept Plan in both 2007 and 2008. Thus, the court found McCarter was testifying as a fact witness, not as an expert witness.

Foothills Parkway, and the property in-between in the Foothills Parkway which was taken by the state and later conveyed to the United States. In performing this research, Pinkham found there was no 50 foot right of way through the Foothills Parkway to plaintiffs' property. Pinkham confirmed that the right of way to plaintiffs' property through the Foothills Parkway was only 40 feet.

23. Chairman McMahan testified the Commission did not perform the additional research with the intent to overturn the earlier approval, but to get it right.

24. After it was determined the property did not have the necessary 50 foot right of way, Ownby and the Park Service held a meeting to try and determine whether there was access through an adjoining property owned by Earl Worsham. Plaintiff John Schubert attended this meeting.

25. In May 2007, the Planning Commission was informed that the 50 foot right of way platted in 1971 no longer existed. Subsequent to these findings, the Concept Plan was put back on the agenda and the prior approval of the Concept Plan was rescinded for failing to meet the Subdivision Regulations.

26. Plaintiffs contend they were not given notice that the Concept Plan might be rescinded at the May meeting, nor were they notified by the Planning Commission of the rescission. They claim they heard about the rescission by "word of mouth." However, testimony at trial shows plaintiffs were aware that there was a problem with the Concept Plan as evidenced by the fact that Plaintiff Schubert attended the meeting with Ownby and the Park Service where they tried to determine whether access existed via the Worsham

property. *See* Paragraph 24 above. Schubert was certainly aware that the Commission was still looking at whether a 50 foot right of way existed to plaintiffs' property.

27. The Planning Commission's By-laws require a minimum vote of at least a majority of the members present, subject to a small number of limited exceptions where a larger vote is required. At the May 2007 meeting, 14 members of the Planning Commission were present. Plaintiffs argue that at least eight votes were required to constitute a majority of those present. Thus, they argue passage of the rescission with only seven votes violated the Commission's By-Laws. The court disagrees.

28. McMahan testified that as Chairman of the Commission, he would only vote if it was necessary to break a tie. At this meeting, one commissioner was absent and the vote to rescind the prior approval was 7 to 6. Since there was no tie, McMahan did not vote. He explained that the By-Laws do not require a vote of a majority of the entire Commission; but instead a majority vote, as long as a quorum is present.

29. Sometime following the Planning Commission's rescission of approval for the Concept Plan, Ownby advised plaintiffs that they had a right to apply for a variance. Roughly 3 to 4 meetings were held between Ownby and plaintiffs' representatives from May of 2007 to early 2008.

30. The High Bridge Concept Plan was resubmitted with a request for a variance during the May 2008 Planning Commission meeting. The plan was ultimately never voted on, as one of the plaintiffs, Ron Ogle, chose to remove it from the agenda.

31. McCarter was asked again in 2008 to perform a second review of the title and the instruments in the chain of title after plaintiffs' attorney indicated there was in fact

7

a 50 foot right of way to the property. After McCarter and Pinkham conducted a second review of the title information, McCarter again told the Planning Commission there was no 50 foot right of way serving plaintiffs' property.

32. McCarter stated that the previously developed Miller's Creek Subdivision had a variance because there was only a 40 foot right of way serving Miller's Creek where a 50 foot right of way was required under the Subdivision Regulations. Plaintiffs dispute that the Miller's Creek Subdivision received a variance, as a variance is not reflected in the Planning Commission minutes. Whether Miller's Creek was approved with or without a variance, McCarter's statement that Miller's Creek had obtained a variance in order to develop their subdivision was relied upon by the Planning Commission when they voted to deny plaintiffs' Concept Plan.

33. Planning Commission Chairman, Jack McMahan, acknowledged that the approval of Miller's Creek Subdivision, without a variance, may have been a mistake, but that did not give the Planning Commission a license to make the same mistake again. McMahan testified he could recall no instances where only a 40 foot right of way was required for approval without a variance. Other than Miller's Creek, plaintiffs identified no other subdivision development that was granted approval with only a 40 foot right of way.

34. In December 2008, plaintiffs' Concept Plan was brought back in front of the Planning Commission. Kevin Fitzgerald from the Park Service was in attendance and addressed the Planning Commission, advising them Scottish Highland Way had only a 40 foot right of way across the Foothills Parkway. The resubmitted Concept Plan was again

denied for lacking the required access under the Subdivision Regulations. The minutes from this meeting reflect two reasons for the denial: The Concept Plan (1) did not provide for access directly to a county road, or (2) access via a 50 foot permanent easement to a county road.

35. Ronnie Allen, a member of the Planning Commission at the time plaintiffs' Concept Plan was considered, stated the reason the Plan was denied was due to a lack of a 50 foot right of way to plaintiffs' property.

35. Ronnie Keener, another member of the Planning Commission, also testified the reason for the denial was a lack of a 50 foot right of way to plaintiffs' property.

36. Ownby could not recall a single instance where the Planning Commission ever intentionally denied a developer's plan where a 50 foot right of way existed.

37. Allen and Keener likewise testified they could not recall a single instance where the Planning Commission intentionally denied a developer's plan where the plan met the Subdivision Regulations. Both further testified they could recall no instance where a concept plan had been approved without the required 50 foot access. Plaintiffs argue this testimony shows the witnesses were not aware of the multiple approvals of Miller's Creek, which were approved without a 50 foot access. However, it does support Chairman McMahan's testimony that the members believed that the Miller's Creek developments were granted a variance.

38. Both Planning Commission Chairman McMahan and County Planner Ownby testified that a concept plan for a different development was also denied in December 2008 for failing to meet the 50 foot right of way requirement. The concept plan

for that development, Covemont Ridge Estates, was denied because it lacked access via a 50 foot right of way.

39. Plaintiff Schubert could not tell the court of any other development that was treated differently than plaintiffs, and acknowledged there was no guarantee that plaintiffs' property could be developed when the property was purchased or when plaintiffs submitted their Concept Plan to the Planning Commission.

40. Plaintiffs include in their proposed findings actions taken in 2018 by the Planning Commission. The court ruled at trial this evidence was not relevant to the central issue in this case – whether the Planning Commission acted arbitrarily and capriciously in denying plaintiff's concept plan for the High Bridge Development in 2008. Accordingly, the court has not considered events following the Planning Commission's 2008 decision denying plaintiffs' Concept Plan.

## Conclusions of Law

### A. Protected Property Interest

To establish a cause of action under 42 U.S.C. § 1983, a plaintiff must show (1) a deprivation of a right secured by the Constitution or laws of the United States, (2) caused by a person acting under color of state law. *Hunt v. Sycamore Cmty. Sch. Dis. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). The rights protected include procedural due process, substantive due process, and equal protection, all of which are found in the Fourteenth Amendment to the Constitution.

Both substantive and procedural due process are examined under a two-part analysis. First, the court must determine whether the interest at stake is a protected liberty

or property interest under the Fourteenth Amendment. *Ziss Bros. Constr. Co. v. City of Independence,* 439 Fed.Appx. 467, 471 (6th Cir. 2011). It is only after a protected right is identified that the court will consider whether a deprivation of that interest contravened the notions of due process embodied by the Fourteenth Amendment. *Id.* The Sixth Circuit uses an entitlement test to determine whether an alleged property right is protected under the Fourteenth Amendment. Under that test, a protectable property right exists only if the plaintiff has a legitimate claim of entitlement or a justifiable expectation in the approval of his plan for land use. *Id.* Unilateral expectations of a property interest are insufficient to trigger due process concerns. *Id.*

In *Ziss Bros.,* the Sixth Circuit concluded that the plaintiff did not have a protected property interest to support procedural and substantive due process claims. Plaintiff had purchased a parcel of land to divide into a subdivision consistent with the city's code. Plaintiff alleged that its expectation that the Commission would approve its preliminary plan constituted a protected property interest. *Id.* at 472. The court found that nowhere in the applicable city code was an applicant guaranteed approval of its preliminary plans. *Id.* at 473. Thus, the commission's determination regarding whether a preliminary plan complied with the city code was a discretionary undertaking. *Id.* Because the commission had discretionary authority to evaluate the legality of the preliminary plan, the court found that plaintiff did not possess a protected property interest to support its procedural and substantive due process claims. *See also Brown v. City of Ecorse*, 322 Fed.Appx. 443, 445 (6th Cir. 2009) ("If a zoning authority retains discretion to issue or deny a building permit,

an individual whose permit application has been rejected has no protected property interest").

Here, plaintiffs have pointed to nothing in the County's Subdivision Regulations that guaranteed approval of their Concept Plan. Even if the Concept Plan was approved, there were two more required plans to be submitted by plaintiffs, the Design Plan and Final Plat; neither of which were guaranteed approval by the Planning Commission. Plaintiff Schubert acknowledged that there was no guarantee that he would be able to develop the land when he purchased it. Therefore, the court concludes that Plaintiffs failed to show that they had the requisite property interest to support their procedural and substantive due process claims under § 1983.

## B. Substantive Due Process

Even assuming that plaintiffs could establish a protected property interest in developing the High Bridge property, they failed to show a deprivation of that property interest without substantive and procedural due process. Substantive due process recognizes that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed. *Pearson v. Grand Blanc,* 961 F.2d 1211, 1216 (6th Cir. 1992). A governmental actor violates a plaintiff's substantive due process right by acting arbitrarily and capriciously. *Id.* at 1221. A government acts arbitrarily and capriciously when its actions are not supportable on any rational basis or are "willful and unreasoning action, without consideration, in disregard of the facts or circumstances of the case." *Layman Lessons, Inc. v. City of Millersville*, 636 F.Supp.2d 620, 651 (M.D.Tenn. 2008).

In order to succeed on a substantive due process claim, a plaintiff must show that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through "arbitrary and capricious action." *Paterek v. Village of Armada*, 801 F.3d 630, 648 (6th Cir. 2015). The Sixth Circuit has stated that it will not "interfere with local zoning decisions unless the locality's action has no foundation in reason and is a mere arbitrary or irrational exercise of power." *Id.*

Where a substantive due process attack is made on an administrative action, the scope of review by the federal courts is extremely narrow. To prevail, a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the decision. *Pearson*, 961 F.2d 1221. The court's review is limited to determining whether the agency paid attention to the evidence adduced and acted rationally upon it. *Id.* The agency decision may not be set aside if there is some factual basis for the agency action. *Id.* In addition, the courts should show respect for the local authority's professional judgment. They may not override it unless it is such a substantial departure from accepted norms as to demonstrate that the decisionmaker did not actually exercise professional judgment. *Id.*

Plaintiffs argue there is no evidence that any Commissioner exercised his independent professional judgment regarding what regulations applied to plaintiffs' Concept Plan. Plaintiffs further argue the Commissioners "blindly accepted" Ownby's representations that a 50 foot requirement applied. The court disagrees.

The Planning Commission's decision to deny plaintiffs' Concept Plan was based upon the findings of the County Attorney McCarter, the recommendation of the County

Planner Ownby, information from the National Park Service, and an understanding of the Subdivision Regulations at the time the decision was made in 2008. Every Commissioner called at trial testified that the access road to a subdivision had to have a 50 foot right of way. Although the Commissioners could not cite the exact place in the regulations where this provision appears, they certainly knew the substance of the regulation – that a 50 foot right of way was required for a primary residential street. *See* Article III, Section A, Paragraph 4(d). The parties do not dispute that the portion of Scottish Highland Way that crosses the Foothills Parkway has only a 40 foot right of way. Plaintiff Schubert acknowledged that when the property was purchased in 2005, there was only a 40 foot easement that was noted on plaintiff's deed. The court finds defendants' denial of the Concept Plan rational in light of the information before the Planning Commission. Plaintiffs failed to show the Planning Commission's decision was either arbitrary or capricious.

## C. Procedural Due Process

In order to establish a procedural due process claim, a plaintiff must show (1) a constitutionally protected property or liberty interest, (2) plaintiff was deprived of that interest, and (3) the state did not afford adequate procedural rights prior to depriving plaintiff of that interest. *Taylor Acquisitions, LLC v. City of Taylor*, 313 Fed.Appx. 826, 830 (6th Cir. 2009). Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. *Warren v. City of Athens,* 411 F.3d 697, 708 (6th Cir. 2005). Only after a plaintiff has met the burden of demonstrating that plaintiff possessed a protected property

interest and was deprived of that interest will the court consider whether the process provided the plaintiff violated the right to due process. *Id.* Where a plaintiff establishes a possessory interest, a governmental entity must provide "adequate notice and a meaningful hearing prior to any attempt to deprive the interest holder of any rights." *Hamby v. Neel,* 368 F.3d 549, 560 (6th Cir. 2004). An abstract need or unilateral expectation does not suffice to create a property interest; rather, a plaintiff must have a legitimate claim of entitlement. *Richardson v. Township of Brady,* 218 F.3d 508, 517 (6th Cir. 2000).

Plaintiffs argue the Commission's May 2007 rescission of its prior approval of their Concept Plan violated plaintiffs' procedural due process rights. The court disagrees.

First, as stated above, the court finds that plaintiffs did not have a protected property interest in having their Concept Plan approved. Second, plaintiffs received the process they were due. Testimony at trial as well as the record in this case, shows plaintiffs were provided several opportunities to have their Concept Plan heard before the Planning Commission. The County Planner met with Southern Design Group several times to discuss the proposal and to go over information required for a plan to be submitted to the Planning Commission. Plaintiff Schubert admitted at trial that there was no guarantee that he would be able to develop the land. The approval of the Concept Plan was only the first step in a series of submittals that required approval. Denial of the Concept Plan in 2008 did not prevent plaintiffs from submitting further concept plans. The court finds plaintiffs failed to show they had a protected property interest or that they were not afforded adequate procedural rights. Plaintiffs can state neither a procedural due process claim nor a substantive due process claim.

**D.  Equal Protection**

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Under the Equal Protection Clause, the states cannot make distinctions that (1) burden a fundamental right, (2) target a suspect class, or (3) intentionally treat one individual differently from others similarly situated without any rational basis.  *Taylor,* 313 Fed.Appx. at 836.  The rational basis test means that courts will not overturn government action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational."   *Ziss,* 439 Fed.Appx. at 476.  Plaintiffs bear the burden of demonstrating that the challenged action had no rational basis.  *Id.*  The governmental entity has no obligation to produce evidence to sustain the rationality of its action.  Its choice is "presumptively valid."  *Id.*

Plaintiffs claim unequal treatment by the Planning Commission because the Commission required a 50 foot right of way as a condition for approval of their Concept Plan, when the Millers Creek developments were approved with a 40 foot right of way.  Defendants respond that Millers Creek is a much smaller development made up of only 12-14 tracts, while the High Bridge Concept Plan contains 400-450 tracts.  The court agrees that Millers Creek is not similarly situated to the proposed High Bridge development.  Although plaintiffs argue that the number of tracts in High Bridge compared to Millers Creek is not a factor be considered, the court finds that the number of tracts is highly relevant to the issue whether Millers Creek is similarly situated to High Bridge.  Also

relevant to the court's analysis, the proof at trial shows that other concept plans were also denied due to a lack of access via a 50 foot right of way. Plaintiff Schubert admitted he could not tell the court of any other development that was treated differently than High Bridge. Thus, the court finds plaintiffs failed to demonstrate that the Planning Commission lacked a rational basis for denying their Concept Plan, or treated them differently than a similarly situated development.

## **Conclusion**

For the foregoing reasons, the court finds that the Planning Commission's decision to deny plaintiffs' Concept Plan for the High Bridge development was rational in light of the information before it, and not arbitrary or capricious. Plaintiffs had no protected property interest in having their Concept Plan approved by the Planning Commission, and disapproval of the Plan did not violate Equal Protection.

A judgment consistent with these findings of fact and conclusions of law will be entered.

*[signature]*
**UNITED STATES DISTRICT JUDGE**